## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| ROBERT E. ADAMS,       )<br>                                          )<br>             Plaintiff,      )<br>                                          )<br>      v.                             )<br>                                          )<br>UNITED STATES OF AMERICA      )<br>(DEPARTMENT OF HOMELAND   )<br>SECURITY, a cabinet department of the )<br>United States federal government),      )<br>                                          )<br>             Defendant.   )<br>                                          ) | No. _____ |

## COMPLAINT FOR PROPERTY DAMAGES RESULTING FROM NEGLIGENCE

Pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, Plaintiff Robert E. Adams, by and through counsel, Freedman Boyd Hollander Goldberg Urias & Ward P.A. (Vincent J. Ward and Frank T. Davis Jr.), hereby brings this Complaint for Property Damages Resulting from Negligence against the United States of America (Department of Homeland Security). As grounds for this Complaint, Plaintiff states as follows:

### JURISDICTION AND VENUE

1. Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1346(b), 2671 *et seq.*, 1331, and 1367.

2. Mr. Adams is a resident of Bernalillo County, New Mexico.

3. Defendant is the United States of America. The Department of Homeland Security (DHS) is a cabinet department of the United States federal government.

4. At all times material to this Complaint, the DHS employees who caused the damages complained of herein were acting within the course and scope of their employment with DHS.

5. Prior to filing this action, Mr. Adams provided timely notice of his claim to DHS and exhausted his administrated remedies.

## PARTIES

6. Mr. Adams incorporates by reference the preceding paragraphs as though set forth fully herein.

7. Mr. Adams resides in Albuquerque, New Mexico, where he owns and operates a small business that collects and sells unique and valuable firearms.

8. Upon information and belief, DHS does business in the State of New Mexico and the State of Colorado, and the acts complained of occurred within Bernalillo County, New Mexico and Denver, Colorado.

## FACTUAL BACKGROUND

9. Mr. Adams incorporates by reference the preceding paragraphs as though set forth fully herein.

10. This damages to personal property claim arises from the negligent handling of Mr. Adams' personal property during and after illegal searches and seizures conducted by DHS on January 23, 2013 in Albuquerque, New Mexico and on February 7, 2013 in Denver, Colorado.

11. Mr. Adams has been a holder of various federal firearms licenses since the 1960s and has lawfully amassed a large inventory of firearms – both in his personal collection and in his firearms business.

12. Most of Mr. Adams' firearms were manufactured over fifty (50) years ago and are primarily of value to collectors.

13. Mr. Adams sells some of his collectible firearms through a business located in Albuquerque, New Mexico.

14. On January 23, 2013, Mr. Adams was returning to his residence from a medical appointment. Approximately two blocks from his home, Mr. Adams's vehicle was suddenly blocked by a vehicle in front and another behind.

15. Individuals dressed in tactical gear and appearing to be law enforcement officials jumped from the vehicles bearing automatic weapons, which were pointed at Mr. Adams. The individuals demanded that Mr. Adams exit his vehicle and lay on the ground.

16. Mr. Adams was searched, handcuffed, and placed into the back seat of his own vehicle. One of the aforementioned individuals drove Mr. Adams to his residence.

17. Thereafter, Mr. Adams's wife was ordered to exit the Adams's home, whereupon she was also detained and placed into the front passenger seat of the Adams's vehicle.

18. Mr. and Mrs. Adams were told they were being detained, and were not permitted to exit the vehicle for approximately an hour.

19. While in custody, Mr. Adams was told that a warrant related to alleged gun smuggling was being executed.

20. Mr. Adams was Mirandized, and responded that he would like to contact an attorney.

21. Throughout the day, numerous law enforcement officials arrived on the scene, most of whom were agents of DHS. These government officials were dressed in military style or SWAT gear and were also armed with automatic weapons.

22. Mr. Adams's place of business was raided on the same day, as well as a trailer owned by Mr. Adams, which was parked at a neighbor's home across the street from Mr. Adams's residence.

23. As the searches continued, Mr. Adams was permitted to exit his vehicle, contacted an attorney, and stood outside the perimeter of his property, where a crowd, including news media gathered. A helicopter circled overhead for much of the day. The search began around 8:30 a.m. and did not conclude until approximately 9:00 p.m.

24. Mr. Adams estimates as many as one-hundred (100) law enforcement officials came and went from his home, loading numerous items, including but not limited to collectible antique firearms.

25. During the course of the raids, and the news media spectacle, some of Mr. Adams's property was roughly handled, broken, doors and locks destroyed, containers pried open, and personal possessions damaged.

26. Subsequently, on February 7, 2013, DHS raided properties owned by Mr. Adams in Colorado and a storage facility there.

27. Mr. Adams was not made aware of the illegal searches in Colorado until a neighbor of his Colorado property telephoned him to inform his property was being raided by DHS.

28. DHS gained access to Mr. Adams's property by breaking the locks to the door, pried open safes, and again seized firearms and firearms-related records and documents, and materials pertaining to Mr. Adams's business and firearms collection.

29. During the illegal searches and seizures conducted by Defendants on January 23, 2013 in Albuquerque, New Mexico and on February 7, 2013 in Denver, Colorado, DHS seized

hundreds of thousands of dollars worth of Mr. Adams's property, including but not limited to nearly sixteen-hundred (1,600) rare and historically significant firearms, computer equipment, paperwork and other personal property.

30. Shortly after the illegal searches and seizures, Mr. Adams filed a pre-indictment motion for the return of his property pursuant to Rule 41 of the Federal Rules of Criminal Procedure.

31. After the district court ruled, the government agreed to return the vast majority of Mr. Adams's property – including almost all of the rare and collectible firearms seized from his personal residences and businesses in New Mexico and Colorado.

32. The first such return of firearms, which had been seized in Colorado, took place on September 10, 2013.

33. Some of the firearms seized during the New Mexico raids were returned to Mr. Adams on September 23 and 24, 2013.

34. Another return of seized firearms and Mr. Adams's property occurred on November 26, 2013.

35. Mr. Adams was eventually indicted in Case No. 1:13-cr-03301-JAP and prosecuted under forty-seven (47) counts of various alleged firearms and importation of firearms charges.

36. The unsubstantiated charges against Mr. Adams were dismissed without prejudice on July 16, 2015.

37. After the unsubstantiated charges against Mr. Adams were dismissed, the remainder of Mr. Adams's seized property and firearms were returned to him.

38. Mr. Adams's property was substantially and severely damaged during and/or after the illegal searches and seizures.

39. At least one valuable firearm remains missing.

40. An antique 1839 U.S. Flintock Musket was broken in half.

41. A rare and collectible Gustloff Shotgun suffered irreparable damage.

42. Various parts of Mr. Adams's firearms were missing or broken including, but not limited to: pistol grips, holsters, firearms magazines, crates, pistol boxes, and presentation cases.

43. Virtually all of the seized firearms were mishandled and/or carelessly stored.

44. All of the firearms had scratches and gouges that were not present before the illegal searches and seizures.

45. At least three (3) of Mr. Adams's computer hard drives were destroyed.

46. The destruction of the hard drives caused Mr. Adams to lose thousands of dollars worth of data.

47. As a result of the illegal searches and seizures, Mr. Adams lost income and suffered business related damages including, but not limited to: lost purchasing and sales opportunities. Mr. Adams's business reputation has also been irreparably damaged.

48. Mr. Adams's home was ransacked. Doors, windows, furniture, flooring, storage containers, and other items were destroyed and/or severely damaged.

49. Mr. Adams dedicated his life to his business and firearms collection and thus suffered significant emotional distress as a result of the damage to his property.

50. Mr. Adams expended substantial sums of money, time, and resources and incurred attorneys' fees to defend against the charges that resulted from the illegal searches and

seizures – which were dismissed after the district court suppressed all evidence and the Tenth Circuit affirmed the suppression.

51. In the process of the illegal search, DHS failed to use ordinary care in its handling of Mr. Adams's personal property.

52. Mr. Adams is entitled to an award of damages to compensate him for the destruction and/or severe damage to his personal property, which was a direct and proximate result of DHS's negligence.

## COUNT I: NEGLIGENCE

53. Mr. Adams incorporates by reference the preceding paragraphs as though set forth fully herein.

54. Defendant United States of America owed a duty to Mr. Adams to exercise ordinary care in its handling of Mr. Adams's personal property.

55. Defendant breached its duty to Mr. Adams during and after the illegal searches and seizures conducted at his residence and business properties on January 23, 2013 in Albuquerque, New Mexico and on February 7, 2013 in Denver, Colorado.

56. Defendant failure to exercise ordinary care in its handling of Mr. Adams's personal property resulted in damage to and/or destruction of Mr. Adams's personal property.

57. The DHS officials who participated in the illegal searches and seizures and/or came into contact with and/or otherwise handled Mr. Adams's personal property were acting in the course and scope of their employment with DHS.

58. Mr. Adams suffered actual, tangible injuries as a result of DHS's negligence for which he is entitled to recover damages at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Adams respectfully requests the Court enter judgment in his favor and award damages against DHS in an amount to be determined by the jury at trial, including but not limited to:

   a. Compensatory Damages;

   b. Consequential Damages;

   c. Punitive Damages

   d. Costs;

   e. Attorney fees; and

   f. Any other relief the Court deems just and proper.


By:     /s/ *Vincent J. Ward*
Vince J. Ward
Frank T. Davis Jr.
Freedman Boyd Hollander Goldberg Ward & Urias P.A.
P.O. Box 25326
Albuquerque, NM  87125
Phone: (505) 842-9960
Fax:    (505) 842-0761
Email: vjw@fbdlaw.com
Email: ftd@fbdlaw.com

*Attorneys for Plaintiff*